IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JURALDA CAMPOLLO, an individual; FERDINAND CAMPOLLO; an individual, | CIVIL NO. 11-00052 SOM/BMK |
| Plaintiffs, | ORDER GRANTING DEFENDANTS BANK OF AMERICA, N.A., AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S MOTION TO DISMISS, AND GRANTING IN PART AND DENYING IN PART DEFENDANT COUNTRYWIDE BANK, FSB'S MOTION TO DISMISS |
| vs. | |
| BANK OF AMERICA, a Business Entity, form unknown; COUNTRYWIDE BANK, FSB, a Business Entity, form unknown; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, a Business Entity, form unknown; and DOES 1-100 inclusive, | |
| Defendants. | |

ORDER GRANTING DEFENDANTS BANK OF AMERICA, N.A., AND MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC.'S MOTION TO DISMISS,
AND GRANTING IN PART AND DENYING IN PART
DEFENDANT COUNTRYWIDE BANK, FSB'S MOTION TO DISMISS

I.      INTRODUCTION.

        This case arises out of an April 2008 loan and mortgage

transaction.  Plaintiffs Juralda and Ferdinand Campollo assert

federal and state law claims against various entities that

allegedly "participated in, [have] been assigned or been

transferred Rights, or hold[] a position or interest under [the

Campollos'] loan agreement."  Defendants Bank of America, N.A.

("Bank of America"), Countrywide Bank, FSB ("Countrywide"), and

Mortgage Electronic Registration Systems, Inc. ("MERS"), now seek

dismissal of all counts.  The court finds that a hearing on this

matter is neither necessary nor appropriate.  See LR7.2(d).  For the reasons set forth in this order, the court GRANTS the motion and dismisses the Complaint, with leave to amend as to certain counts, as to Bank of America and MERS.  As to Countrywide, the court DENIES the motion with respect to the Campollos' claim for rescission under Count IV, alleging a violation of the Truth in Lending Act ("TILA").  The court GRANTS the motion with respect to all other Counts, including Count IV's TILA damages claim.

II.      FACTUAL BACKGROUND.

The Campollos allege that they obtained a loan from Countrywide for $327,200 on or about April 25, 2008.  Compl. ¶ 2, ECF No. 1.  They allege that this transaction refinanced a loan involving property in Kapaau, Hawaii, and that they pledged the subject property as security.  Compl. ¶¶ 1-2.  The Complaint does not describe the roles of Bank of America and MERS in the transaction, asserting only that these Defendants have "participated in, been assigned or been transferred Rights, or hold[] a position or interest under [the Campollos'] loan agreement."  Compl. ¶ 19.[1]  The Complaint is not entirely clear, but appears to allege that the property is in foreclosure proceedings.  Compl. ¶ 41.

---

[1]The court notes that Bank of America's corporate disclosure statement indicates that the corporate entity "Bank of America, N.A.," includes Countrywide.  ECF No. 16.

The Campollos recite, in general terms,[2] that mortgage brokers and lenders have engaged in predatory lending practices and that the Campollos' loan was in fact a predatory lending transaction. See, e.g., Compl. ¶¶ 17-18, 36-37. The Campollos allege that "[e]ach subsequent Defendant who has participated in, been assigned or been transferred Rights, or holds a position or interest under loan agreement [sic] . . . failed to perform their due diligence in investigation [sic] the legal requirements that this loan should have been processed within." Compl. ¶ 19.

The Complaint asserts that the loan terms were "not clear or conspicuous, nor consistent, and are illegal, and include, for example, extremely high ratios with respect to Plaintiff's Income and Liabilities." Compl. ¶ 20. The Complaint also alleges that Countrywide failed to verify the Campollos' prior or current income or their employment. Compl. ¶¶ 24, 28. The Complaint says that the terms of the loan are such that the Campollos "can never realistically repay the loan," and that Defendants knowingly made it impossible for the Campollos to ever own the subject property free and clear. Compl. ¶ 20; see also Compl. ¶¶ 25, 29. The Complaint further alleges that Defendants

---

[2]In fact, this Complaint appears to be nearly identical in form to several other complaints filed by pro se plaintiffs in this court, all asserting the same twelve causes of action and attaching a "Forensic Audit Report" by Francha Services, LLC. See Asao v. Citi Mortgage, Inc., Civ. No. 10-00553 SOM/KSC (D. Haw. Apr. 28, 2011) (citing several identical complaints).

3

failed to explain the "workings" of the mortgage transaction to the Campollos. Compl. ¶ 27.

The Complaint alleges both that Countrywide charged the Campollos a higher interest rate than they could have gotten from another lender, and that they would not have qualified for the Countrywide loan had Countrywide employed proper underwriting standards. Compare Compl. ¶ 20 (alleging that the "fees, charges, and or interest rate[]" were more expensive than alternative financing for which the Campollos could have qualified) with Compl. ¶¶ 25, 32-33 ("Plaintiff should have been declined for this loan"). The Complaint also alleges that the Campollos paid "egregious" fees in an unspecified amount. Compl. ¶ 21.

According to the Complaint, Defendants violated TILA, 15 U.S.C. §§ 1601-1667, through Countrywide's alleged failure to issue to the Campollos TILA initial disclosures, an accurate Good Faith Estimate, notice of right to cancel, a disclosure relating to Property/Hazard Insurance, and a "CHARM booklet." Compl. ¶¶ 58-59, 61. The Campollos also allege that "Defendants, and each of them, did give, provide or receive a hidden fee or thing of value for the referral of settlement business, including but not limited to, kickbacks, hidden referral fees, and/or yield spread premiums," in violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617. Compl. ¶ 71.

4

The Complaint asserts eleven causes of action against all Defendants: (1) declaratory relief; (2) injunctive relief; (3) breach of implied covenant of good faith and fair dealing; (4) violations of TILA; (5) violations of RESPA; (6) rescission; (7) unfair and deceptive business practices; (8) breach of fiduciary duty; (9) unconscionability; (10) predatory lending; and (11) quiet title. Compl. ¶¶ 40-106. The Complaint also asserts as a twelfth cause of action, solely against MERS, "Lack of Standing; Improper Fictitious Entity." Compl. ¶¶ 107-14. The Campollos seek declaratory relief, an injunction enjoining foreclosure, quiet title, rescission of the loan, damages, and attorney's fees. Compl. p.24.

On May 10, 2011, Defendants filed the present motion to dismiss. ECF No. 15. The Campollos filed no opposition briefing and did not return a call placed by the court on June 14, 2011, regarding this motion.

III.     STANDARD.

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint, or a claim therein, when a claimant fails "to state a claim upon which relief can be granted." Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988) (citing Robertson v.

<u>Dean Witter Reynolds, Inc.</u>, 749 F.2d 530, 533-34 (9th Cir. 1984)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 556, 570 (2007). That is, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S. Ct. at 1949; <u>see</u> <u>Evanns v. AT&T Corp.</u>, 229 F.3d 837, 839 (9th Cir. 2000).

Under Rule 12(b)(6), the court's review is generally limited to the contents of the complaint. <u>See</u> <u>Marder v. Lopez</u>, 450 F.3d 445, 448 (9th Cir. 2006); <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. <u>See</u> <u>Knievel v. ESPN</u>, 393 F.3d 1068, 1072 (9th Cir. 2005). Conclusory allegations and unwarranted inferences, however, are insufficient to defeat a motion to dismiss. <u>See</u> <u>Sanders v. Brown</u>, 504 F.3d 903, 910 (9th Cir. 2007); <u>Cholla Ready Mix, Inc. v. Civish</u>, 382 F.3d 969, 973 (9th Cir. 2004).

In particular, the court should "identify[] pleadings that, because they are no more than conclusions, are not entitled

to the assumption of truth." Iqbal, 129 S. Ct. at 1950. The
court should disregard "[t]hreadbare recitals of the elements of
a cause of action, supported by mere conclusory statements." Id.
at 1949. After eliminating such unsupported legal conclusions,
the court must identify "well-pleaded factual allegations," which
are assumed to be true, "and then determine whether they
plausibly give rise to an entitlement to relief." Id. at 1950.

IV.     ANALYSIS.

        Defendants raise a myriad of challenges to the
Complaint. They argue that the Complaint fails to identify
sufficiently specific allegations against any particular
Defendant and that each of the twelve causes of action fails for
various reasons.[3] See generally Mem. Supp. Mot. ("Mot.") 5-22,
ECF No. 15-1. The court first addresses the global attack on the
Complaint, then turns to the arguments as to each specific Count.
Because of the similarity of the Complaints and the respective
Defendants' motions to dismiss, portions of the court's analysis
here draw heavily from its analysis in Asao. See Order Granting

---

[3] The Complaint also mentions the Equal Opportunity Credit
Act, Compl. ¶ 11; the "Fair Lending/Fair Debt Collection Act,"
id.; and the Federal Trade Commission Act, id. ¶ 38. The
Campollos, however, assert no claims for relief (i.e., no Counts)
for any alleged violations of those federal laws. The Complaint
as written fails to state a claim for violations of those
statutes. Cf. Bautista v. Los Angeles Cnty., 216 F.3d 837, 840-41
(9th Cir. 2000) ("Courts have required separate counts where
multiple claims are asserted, where they arise out of separate
transactions or occurrences, and where separate statements will
facilitate a clear presentation.") (citations omitted).

Def. Island Title Corp.'s Mot. Dismiss Compl., Dismissing All
Claims Against All Defs., & Granting Leave to Amend Certain
Claims, ECF No. 50, Civ. No. 10-00553 SOM/KSC (D. Haw. Apr. 28,
2011).

A.   Specificity of Allegations.

Rule 8(a) of the Federal Rules of Civil Procedure
mandates "a short and plain statement of the claim showing that
the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).
This rule requires that "allegations in a complaint or
counterclaim must be sufficiently detailed to give fair notice to
the opposing party of the nature of the claim so that the party
may effectively defend against it." Starr v. Baca, 633 F.3d
1191, 1204 (9th Cir. 2011). Failure to draft a complaint that
complies with Rule 8 is grounds for dismissal under Rule 41(b) of
the Federal Rules of Civil Procedure. See Nevijel v. N. Coast
Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981).

Defendants argue that the entire Complaint should be
dismissed because it fails to allege specific wrongdoing by any
Defendant. Mot. 5. The court agrees that the Complaint largely
lacks specificity. The Complaint primarily relies on general
allegations regarding wrongdoing by "Defendants," without
identifying specific actions undertaken by specific Defendants.
However, it does identify some specific wrongdoing. See, e.g.,
Compl. ¶¶ 11 (alleging generally that "Defendants . . . failed to

8

provide the requisite Federal forms and disclosures"), 19 (alleging that "[e]ach subsequent Defendant who has participated in, been assigned or been transferred Rights, or holds a position or interest under loan agreement, including Countrywide Bank, FSB, Bank of America, and MERS DEFENDANTS . . . failed to perform their due diligence in investigat[ing] the legal requirements that this loan should have been processed within"), 27 (alleging generally that Defendants failed to explain the loan); 58-59 (alleging that Countrywide failed to issue documents required by TILA). The court is also aware that the Campollos are acting pro se. See ECF No. 1. Moreover, it appears from Defendants' motion to dismiss that they were able to sufficiently respond to the Complaint as drafted.

On balance, the court is unable to conclude that the Complaint is so deficient under Rule 8(a) that it merits dismissal in toto on this basis. However, to the extent one or more specific Counts fail to comply with Rule 8(a), the court will analyze Defendants' argument with respect to those Counts.

The court counsels the Campollos that any Amended Complaint they may file should name, as specifically as possible, the wrongdoing they allege on the part of each Defendant. A complaint that fails to explain which allegations are relevant to which defendants is confusing. This, in turn, "impose[s] unfair burdens on litigants and judges" because it requires both to

waste time formulating their own best guess of what the plaintiff
may or may not have meant to assert, risking substantial
confusion if their understanding is not equivalent to
plaintiff's.  See McHenry v. Renne, 84 F.3d 1172, 1179-80 (9th
Cir. 1996).

> B.  Counts I (Declaratory Relief), II (Injunctive
>     Relief), and VI (Rescission).

Defendants contend that Count I (declaratory relief)
Count II (injunctive relief), and Count VI (rescission) fail to
state claims upon which relief can be granted because the claims
are remedies, not independent causes of action.  The court agrees
that these Counts fail to state claims.  Mot. 21-23.

Count I appears to seek relief under the Declaratory
Judgment Act, 28 U.S.C. § 2201.[4]  Count I alleges that "[a]n
actual controversy has arisen and now exists between Plaintiff
and Defendants regarding their respective rights and duties, in
that Plaintiff contends that Defendants did not have the right to
foreclose on the Subject Property."  Compl. ¶ 41.  The Campollos

---

[4]The Declaratory Judgment Act provides in pertinent part:

> a) In a case of actual controversy within its
> jurisdiction . . . any court of the United States, upon
> the filing of an appropriate pleading, may declare the
> rights and other legal relations of any interested
> party seeking such declaration, whether or not further
> relief is or could be sought.  Any such declaration
> shall have the force and effect of a final judgment or
> decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

ask the court to declare that "the purported power of sale contained in the Loan [is] of no force and effect at this time" because of "numerous violations of State and Federal laws designed to protect borrowers." Id. ¶ 42. The Complaint alleges that, "[a]s a result of the Defendants' actions, Plaintiffs have suffered damages . . . and seeks [sic] declaratory relief that Defendants' purported power of sale is void." Id. ¶ 43.

As pled, the Campollos' declaratory relief claim is not cognizable as an independent cause of action. See Seattle Audubon Soc'y v. Moseley, 80 F.3d 1401, 1405 (9th Cir. 1996) ("A declaratory judgment offers a means by which rights and obligations may be adjudicated in cases brought by any interested party involving an actual controversy that has not reached a stage at which either party may seek a coercive remedy and in cases where a party who could sue for coercive relief has not yet done so.") (citation and quotation marks omitted). That is, because the Campollos' claims are based on allegations regarding Defendants' past wrongs, a claim under the Declaratory Judgment Act is improper and essentially duplicates the other causes of action. See, e.g., Ballard v. Chase Bank USA, N.A., 2010 WL 5114952, at *8 (S.D. Cal. Dec. 9, 2010) ("A claim for declaratory relief 'rises or falls with [the] other claims.'") (alteration in original, citation omitted); Ruiz v. Mortg. Elec. Registration Sys., Inc., 2009 WL 2390824, at *6 (E.D. Cal. Aug. 3, 2009)

(dismissing claim for declaratory judgment when foreclosure had already occurred and the plaintiff was seeking "to redress past wrongs"); Edejer v. DHI Mortg. Co., 2009 WL 1684714, at *11 (N.D. Cal. June 12, 2009) ("Plaintiff's declaratory relief cause of action fails because she seeks to redress past wrongs rather than a declaration as to future rights."); Mangindin v. Washington Mut. Bank, 637 F. Supp. 2d 700, 707 (N.D. Cal. 2009) ("A claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action.").

With respect to Count II, the court follows the well-settled rule that a claim for "injunctive relief" standing alone is not a cause of action. See, e.g., Henke v. Arco Midcon, L.L.C., 750 F. Supp. 2d 1052, 1059-60 (E.D. Mo. 2010) ("Injunctive relief, however, is a remedy, not an independent cause of action."); Jensen v. Quality Loan Serv. Corp., 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of action") (quotation marks and citation omitted); Plan Pros, Inc. v. Zych, 2009 WL 928867, at *2 (D. Neb. Mar. 31, 2009) ("no independent cause of action for injunction exists"); Motley v. Homecomings Fin., LLC, 557 F. Supp. 2d 1005, 1014 (D. Minn. 2008) (same). Injunctive relief may be available if the Campollos are entitled to such a remedy on an independent cause of action.

Finally, Count VI asserts that "Plaintiffs are entitled to rescind the loan for all of the foregoing reasons: 1) TILA Violations; 2) RESPA; 3) Fraudulent Concealment; 4) Deceptive Acts and Practices (UDAP) and 5) Public Policy Grounds, each of which provides independent grounds for relief." Compl. ¶ 74. Like injunctive and declaratory relief, rescission "is only a remedy, not a cause of action." Bischoff v. Cook, 118 Haw. 154, 163, 185 P.3d 902, 911 (Ct. App. 2008). A right of rescission thus "rises or falls with [the] other claims." Ballard, 2010 WL 5114952, at *8 (alteration in original). Indeed, as alleged here, Count VI specifically acknowledges that it is seeking rescission based upon "independent grounds for relief."

Accordingly, the court DISMISSES Counts I, II, and VI without leave to amend. If the Campollos eventually prevail on an independent claim, the court will necessarily render a judgment setting forth (i.e., "declaring") as much and providing appropriate remedies. If injunctive relief is proper, it will be because the Campollos prevail (or have met the necessary test for such relief under Rule 65 of the Federal Rules of Civil Procedure) on an independent cause of action. The court will address the merits of rescission when addressing any independent claim allowing rescission.

C.    Count III (Contractual Breach of Implied Covenant
      of Good Faith and Fair Dealing).

Count III asserts a "Contractual Breach of Implied
Covenant of Good Faith and Fair Dealing."  The Campollos allege
that every contract imposes a duty of good faith and fair dealing
"in its performance and its enforcement," Compl. ¶ 50, and that
"Defendants willfully breached their implied covenant of good
faith and fair dealing" by engaging in the acts alleged in the
Complaint (such as withholding disclosures or information, and
"willfully plac[ing] Plaintiffs in a loan that they did not
qualify for").  Id. ¶ 53.

This claim in essence asserts the tort of "bad faith."
See Best Place, Inc. v. Penn Am. Ins. Co., 82 Haw. 120, 128, 920
P.2d 334, 342 (1996) (adopting tort of bad faith for breach of
implied covenant of good faith and fair dealing in an insurance
contract).  Although bad faith is an accepted tort when a
plaintiff is a party to an insurance contract, the tort has not
been recognized in Hawaii based on a mortgage loan contract.

Moreover, although commercial contracts for sale of
goods also require good faith in their performance and
enforcement, this obligation does not create an independent cause
of action.  See Stoebner Motors, Inc. v. Automobili Lamborghini
S.P.A., 459 F. Supp. 2d 1028, 1037-38 (D. Haw. 2006).  Hawaii
courts have noted that "[o]ther jurisdictions recognizing the

tort of bad faith . . . limit such claims to the insurance context or situations involving special relationships characterized by elements of fiduciary responsibility, public interest, and adhesion." Id. at 1037 (quoting Francis v. Lee Enters., 89 Haw. 234, 238, 971 P.2d 707, 711 (1999)). The Campollos thus do not properly plead an independent claim of bad faith.

Importantly, even assuming a bad faith tort exists outside the insurance context, "[a] party cannot breach the covenant of good faith and fair dealing before a contract is formed." Contreras v. Master Fin., Inc., 2011 WL 32513, at *3 (D. Nev. Jan. 4, 2011) (citing Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc., 157 F.3d 933, 941 (2d Cir. 1998) ("[A]n implied covenant relates only to the performance under an extant contract, and not to any pre-contract conduct.")). Hawaii follows this distinction. See Young v. Allstate Ins. Co., 119 Haw. 403, 427, 198 P.3d 666, 690 (2008) (indicating that the covenant of good faith does not extend to activities occurring before consummation of an insurance contract).

All of Count III's allegations concern precontract activities (failing to disclose terms, failing to conduct proper underwriting, and making an improper loan). Defendants cannot be liable for breaching a contract covenant when no contract existed. See id.; see also Larson v. Homecomings Fin., LLC, 680

F. Supp. 2d 1230, 1237 (D. Nev. 2009) ("Because Plaintiffs' claim revolves entirely around alleged misrepresentations made before the [mortgage loan] contract was entered into, [the bad faith claim] fails as a matter of law.").

Even if the Campollos were attempting to assert bad faith in the performance of a contractual right to foreclose, "a court should not conclude that a foreclosure conducted in accordance with the terms of a deed of trust constitutes a breach of the implied covenant of good faith and fair dealing." Davenport v. Litton Loan Servicing, LP, 725 F. Supp. 2d 862, 884 (N.D. Cal. 2010) (citation omitted). "The covenant [of good faith] does not 'impose any affirmative duty of moderation in the enforcement of legal rights.'" Id. (quoting Price v. Wells Fargo Bank, 261 Cal. Rptr. 735, 742 (Cal. Ct. App.), modified on denial of reh'g, 261 Cal. Rptr. 735 (Cal. Ct. App. 1989)).

Accordingly, Count III is DISMISSED. Because further amendment would be futile, dismissal of Count III is without leave to amend.

D.   Count IV (TILA).

Alleging that Defendants violated TILA in issuing the mortgage and loan, the Campollos seek rescission and damages. See Compl. ¶¶ 56-65, 74. As explained below, the court concludes that the Campollos' TILA damages claim is subject to dismissal, with prejudice. Defendants' motion to dismiss challenges the

16

Complaint on statute of limitations grounds and the Campollos, having failed to oppose the motion to dismiss, have forgone any argument that equitable tolling may apply.  15 U.S.C. § 1640(a); Hubbard v. Fidelity Fed. Bank, 91 F.3d 75, 79 (9th Cir. 1996). With respect to Bank of America and MERS, the TILA rescission claim must also be dismissed, without prejudice, because the Campollos fail to allege any wrongdoing as to these Defendants. However, with respect to Countrywide, the court declines to dismiss the TILA rescission claim.

The Campollos' damage remedy under TILA is time-barred. A TILA plaintiff may seek actual damages for a lender's failure to provide proper disclosures.  See 15 U.S.C. § 1640(a).  Under 15 U.S.C. § 1640(e), however, an action for damages by a private individual must be instituted "within one year from the date of the occurrence of the violation."  The Ninth Circuit has interpreted this to mean that the limitations period for a damage claim based on allegedly omitted or inaccurate disclosures begins on "the date of consummation of the transaction."  King v. Cal., 784 F.2d 910, 915 (9th Cir. 1986); see also Hubbard, 91 F.3d at 79 (holding that when a lender fails to comply with TILA's initial disclosure requirements, a borrower has one year from obtaining the loan to file suit).  To the extent the Campollos seek money damages for TILA violations arising out of the April 2008 loan, those claims are barred by the one-year statute of

limitation, as the Campollos did not file their Complaint until
January 21, 2011.

Under TILA, borrowers have the right to rescind certain
credit transactions in which the lender retains a security
interest in the borrower's principal dwelling. 15 U.S.C.
§ 1635(a).[5] The borrower has the right to rescind the
transaction for three business days following the later of the
date of the transaction's consummation or the date of the
delivery of the information, rescission forms, and material
disclosures required by TILA. Id. If the required information,
rescission forms, or material disclosures are not delivered by
the creditor, the right to rescind expires three years after the
transaction's consummation. Id. § 1635(f); King, 784 F.2d at
915. Pursuant to the statute and Regulation Z, 12 C.F.R. Pt.
226, a borrower may exercise the right to rescind by notifying
the creditor of his intention to do so. See 15 U.S.C. § 1635(a);
12 C.F.R. § 226.23.

The Complaint fails to allege facts suggesting that
Bank of America or MERS should be liable for a violation of
TILA's right to rescission. The Campollos allege only that
Countrywide failed to provide them with notice of the right to

_____

[5]The Campollos allege that the loan was for the purpose of
refinancing their home. Compl. ¶ 4. Refinance transactions are
subject to a right of rescission under TILA. See, e.g., Jones v.
E*Trade Mortg. Corp., 397 F.3d 810 (9th Cir. 2005).

cancel when the loan was executed.  Compl. ¶ 59.  Consequently,
the court dismisses the claim for rescission, with leave to
amend, as to Bank of America or MERS.  See Fed. R. Civ. P. 8.
The court declines to dismiss this Count with respect to the
Campollos' claim for rescission against Countrywide.  Defendants
argue that Plaintiffs "fail to allege how" their failure to
receive "various periphery documents," including the notice of
right to cancel, constitutes a violation of TILA.  Mot. 10.  On a
review of the Complaint, the court cannot conclude that the
allegations with respect to this Count fall below the burden of
pleading articulated in Iqbal and Twombly.  The simple allegation
that Countrywide failed to provide the Campollos with a right-to-
cancel notice when their loan was executed in April 2008
plausibly alleges a violation of TILA, for which the prescribed
remedy is a three-year extension of the right of rescission.  See
15 U.S.C. § 1635(a); 12 C.F.R. § 226.23.  The Campollos'
Complaint was filed within the three-year period.

        Defendants also argue that the Campollos' claim for
rescission must be dismissed because the Campollos fail to allege
they can tender the amount of their debt.  Id.  As this court has
previously held, however, an ability to tender loan proceeds is
not an element set forth in TILA, and so need not be alleged in
the Complaint.  In Agustin v. PNC Financial Services Group, Inc.,
707 F. Supp. 2d 1080 (D. Haw. 2010), the court rejected a motion

                              19

to dismiss on this ground. Id. at 1090. As the court noted, district courts appear to be split on the question of whether an ability to tender must be alleged in the Complaint. See id. (citing Valdez v. Am.'s Wholesale Lender, 2009 WL 5114305, at *4 (N.D. Cal. Dec. 18, 2009 (noting split among courts)). Because "TILA itself contains no such requirement," the court reasoned, the defendant failed to "establish that a failure to allege tender renders the rescission claims defective." 707 F. Supp. 2d at 1090. Accord Sakugawa v. Countrywide Bank F.S.B., 2011 WL 572528, at *5-*6 (D. Haw. Feb. 14, 2011) (declining to dismiss TILA rescission claim for failure to allege tender). The tender issue is more properly raised in a summary judgment motion.

Accordingly, the court GRANTS the motion to dismiss the Campollos' TILA claim for damages, with prejudice. The court DENIES the motion to dismiss the Campollos' TILA rescission claim as to Countrywide, but GRANTS the motion, with leave to amend, as to Bank of America and MERS.

E.   Count V (RESPA).

The Campollos' RESPA claim is subject to dismissal. The Complaint alleges that: (1) Defendants received "egregious" fees for making the loan; and (2) Defendants "did give, provide or receive a hidden fee or thing of value for the referral of settlement business, including but not limited to, kickbacks,

hidden referral fees and/or yield spread premiums," in violation of 24 C.F.R. § 3500.14. Compl. ¶¶ 70-71.

Defendants argue that these claims are time-barred, and the court agrees. Violations of 24 C.F.R. § 3500.14 constitute violations of 12 U.S.C. § 2607, section 8 of RESPA. 24 C.F.R. § 3500.14(a). The statute of limitations for violations of § 2607 is one year from the date of the violation. 12 U.S.C. § 2614.

Here, the alleged RESPA violations occurred nearly three years before the Campollos filed their Complaint. The Complaint makes no allegation of equitable tolling. Defendants' motion gave the Campollos notice that their RESPA claims were time-barred, and the Campollos did not file an opposition. The Campollos have not provided the court with any legal or factual reason justifying tolling of RESPA's statute of limitations. The court therefore concludes that the Campollos' RESPA claim is time-barred.

Moreover, to the extent Count V claims that Defendants received excessive fees, that claim under RESPA fails as a matter of law because § 2607 does not prohibit excessive fees, provided the fees were in exchange for real estate settlement services that were actually performed by the recipient. See Martinez v. Wells Fargo Home Mortg., Inc., 598 F.3d 549, 553-54 (9th Cir. 2010) (concluding that, by prohibiting fees "other than for

services actually performed," § 2607, "by negative implication, . . . cannot be read to prohibit charging fees, excessive or otherwise, when those fees are for services that were actually performed").

Accordingly, because the Complaint fails to state a cause of action for violation of RESPA, the court GRANTS Defendants' motion to dismiss the RESPA claim, with prejudice.

F.    Count VII (Unfair and Deceptive Acts and Practices).

Count VII alleges that all Defendants are liable for Unfair and Deceptive Acts and Practices "by consummating an unlawful, unfair, and fraudulent business practice, designed to deprive Plaintiffs of their home, equity, as well as their past and future investment." Compl. ¶ 82. The Campollos allege that Defendants "failed to undergo a diligent underwriting process," failed to disclose matters, should not have approved the loan because they could not afford it, and had "knowledge of these facts, circumstances and risks but failed to disclose them." Id. ¶ 79. Finally, the Campollos allege that they were not provided information in their native language. Id. ¶ 80. Count VII appears to be brought under Hawaii's UDAP law, section 480-2(a) of Hawaii Revised Statutes, which states, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."

The Campollos do not state a claim under section 480-2 of the Hawaii Revised Statutes because "lenders generally owe no duty to a borrower 'not to place borrowers in a loan even where there was a foreseeable risk borrowers would be unable to repay.'" McCarty v. GCP Mgmt., LLC, 2010 WL 4812763, at *6 (D. Haw. Nov. 17, 2010) (quoting Champlaie v. BAC Home Loans Servicing, LP, 706 F. Supp. 2d 1029, 1061 (E.D. Cal. 2009)). See also Sheets v. DHI Mortg. Co., 2009 WL 2171085, at *4 (E.D. Cal. July 20, 2009) (reasoning that no duty exists "for a lender 'to determine the borrower's ability to repay the loan. . . . The lender's efforts to determine the creditworthiness and ability to repay by a borrower are for the lender's protection, not the borrower's.'") (quoting Renteria v. United States, 452 F. Supp. 2d 910, 922-23 (D. Ariz. 2006)).

"[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." Nymark v. Heart Fed. Sav. & Loan Ass'n, 283 Cal. Rptr. 53, 56 (Cal. Ct. App. 1991). Nothing in the Complaint indicates that any Defendant "exceed[ed] the scope of [a] conventional role as a mere lender of money." The claims fail on that basis alone. The court, however, cannot conclude at this time that further amendment is futile and allows the Campollos an opportunity to amend Count VII

to attempt to state a section 480-2 claim.

Count VII is DISMISSED, with leave to amend.

G.    Count VIII (Breach of Fiduciary Duty).

Count VIII alleges, without distinguishing between various Defendants, that "Defendants owed a fiduciary duty to Plaintiff and breached that duty by [f]ailing to advise or notify Plaintiff . . . that Plaintiff would or had a likelihood of defaulting on the loan." Compl. ¶ 85. Defendants also allegedly breached a fiduciary duty owed to the Campollos by "exercis[ing] a greater level of loyalty to each other by providing each other with financial advantages under the loan without disclosing their relation to one another to Plaintiff." Id. ¶ 86. The Campollos also allege that Defendants' "fail[ure] to fully comply with TILA and RESPA" violated Defendants' fiduciary duties. Id. ¶ 88.

Count VIII fails to state a claim against Defendants. As noted earlier, McCarty held that a borrower-lender relationship is not fiduciary in nature:

> Lenders generally owe no fiduciary duties to their borrowers. See, e.g., Spencer v. DHI Mortg. Co., 642 F. Supp. 2d 1153, 1161 (E.D. Cal. 2009) ("Absent 'special circumstances' a loan transaction 'is at arms-length and there is no fiduciary relationship between the borrower and lender.'") (quoting Oaks Mgmt. Corp. v. Super. Ct., 51 Cal. Rptr. 3d 561 (Cal. Ct. App. 2006)); Ellipso, Inc. v. Mann, 541 F. Supp. 2d 365, 373 (D.D.C. 2008) ("[T]he relationship between a debtor and a creditor is ordinarily a contractual relationship . . . and is not fiduciary in nature.") (citation omitted); Nymark v. Heart

24

Fed. Sav. & Loan Ass'n, 283 Cal. Rptr. 53, 54
n.1 (Cal. Ct. App. 1991) ("The relationship
between a lending institution and its
borrower-client is not fiduciary in nature.").

McCarty, 2010 WL 4812763, at *5.

Count VIII is DISMISSED, with leave to amend.

H.    Count IX (Unconscionability).

Count IX asserts "Unconscionability-UCC-2-3202 [sic
2-302]." Count IX further asserts that courts may refuse to
enforce a contract or portions of a contract that are
unconscionable, Compl. ¶ 90, and that courts are to give parties
an opportunity to present evidence regarding a contract's
"commercial setting, purpose and effect" to determine if a
contract is unconscionable. Id. ¶ 91. It goes on to allege:

> Here, based on the deception, unfair
> bargaining position, lack of adherence to the
> regulations, civil codes and federal
> standards that the Defendants were require[d]
> to follow; coupled with the windfall that the
> Defendants reaped financially from their
> predatory practices upon Plaintiff[]s, the
> court may find that the loan agreement and
> trust deed are unconscionable and of no force
> or effect.

Id. ¶ 91.

Unconscionability is generally a defense to the
enforcement of a contract, not a proper claim for affirmative
relief. See, e.g., Gaitan v. Mortg. Elec. Registration Sys.,
2009 WL 3244729, at *13 (C.D. Cal. Oct. 5, 2009)
("Unconscionability may be raised as a defense in a contract

25

claim, or as a legal argument in support of some other claim, but it does not constitute a claim on its own."); see also Barnard v. Home Depot U.S.A., Inc., 2006 WL 3063430, at *3 n.3 (W.D. Tex. Oct. 27, 2006) (citing numerous cases for the proposition that neither the common law nor the Uniform Commercial Code allows affirmative relief for unconscionability).

To the extent unconscionability can be addressed affirmatively as part of a different or independent cause of action, such a claim "is asserted to prevent the enforcement of a contract whose terms are unconscionable." Skaggs v. HSBC Bank USA, N.A., 2010 WL 5390127, at *3 (D. Haw. Dec. 22, 2010) (emphasis in original).[6] Skaggs dismissed a "claim" for unconscionability because it challenged only conduct such as "obtaining mortgages under false pretenses and by charging Plaintiff inflated and unnecessary charges," and "failing to give Plaintiff required documents in a timely manner," but not the

_____

[6] In Skaggs, the court noted in dicta that "at least one Hawaii court has addressed unconscionability when raised as a claim seeking rescission." 2010 WL 5390127, at *3 n.2 (citing Thompson v. AIG Haw. Ins. Co., 111 Haw. 413, 142 P.3d 277 (2006)). This was not an indication that one could raise an affirmative claim for "unconscionability." Indeed, in Thompson, the complaint did not assert a separate count for rescission or unconscionability. See Thompson, 111 Haw. at 417, 142 P.3d at 281 (indicating that the specific counts were for negligence, fraud, breach of duty, and unfair and deceptive trade practices under Haw. Rev. Stat. § 480-2). In Thompson, the remedy of rescission was based on an independent claim. Similarly, a remedy for an unconscionable contract may be possible; a stand-alone claim asserting only "unconscionability," however, is improper. See, e.g., Gaitan, 2009 WL 3244729, at *13.

breach of any specific contractual term.  <u>Id.</u>  Count IX similarly

fails to identify or challenge any particular contract term as

unconscionable.

Count IX is DISMISSED, with leave to amend.

I.   <u>Count X (Predatory Lending).</u>

Count X asserts "Predatory Lending" and lists a variety

of alleged wrongs (e.g., failure to disclose terms and conditions

or material facts, targeting of unsophisticated persons, unfair

loan terms, and improper underwriting) that form the bases of

other causes of action.  Compl. ¶¶ 93-102.

The common law does not support a claim for "predatory

lending."  <u>See</u> <u>Haidar v. BAC Home Loans Servicing, LP</u>, 2010 WL

3259844, at *2 (E.D. Mich. Aug. 18, 2010) (agreeing that "there

is no cause of action for predatory lending"); <u>Pham v. Bank of</u>

<u>Am., N.A.</u>, 2010 WL 3184263, at *4 (N.D. Cal. Aug. 11, 2010)

("There is no common law claim for predatory lending").  To the

extent such "predatory" practices provide a claim for relief,

they appear to be grounded in statutes or other common-law causes

of action such as fraud.  The term "predatory lending" is

otherwise too broad.  <u>See</u> <u>Vissuet v. Indymac Mortg. Servs.</u>, 2010

WL 1031013, at *3 (S.D. Cal. Mar. 19, 2010) (dismissing claim for

"predatory lending" with leave to amend and noting that the term

is expansive and fails to provide proper notice, leaving

defendants "to guess whether this cause of action is based on an

alleged violation of federal law, state law, common law, or some combination"); see also Hambrick v. Bear Stearns Residential Mortg., 2008 WL 5132047, at *2 (N.D. Miss. Dec. 5, 2008) (dismissing a claim for predatory lending that failed to cite any "[state] or applicable federal law, precedential or statutory, creating a cause of action for 'predatory lending.'").

Count X fails to state a cause of action. This does not, of course, mean that "predatory lending" cannot form the basis of some cause of action. Instead, the dismissal signifies that Hawaii courts have not recognized "predatory lending" itself as a common law cause of action. The ambiguous term "predatory lending" potentially encompasses a wide variety of alleged wrongdoing. The cause of action pled here fails to provide notice to any Defendant of what is being claimed. See Vissuet, 2010 WL 1031013, at *3.

Count X is DISMISSED, with leave to amend. The Campollos may attempt to state a cause of action based on specific activities (which might be described as "predatory") provided that any new predatory lending claim is based on a recognized statutory or common law theory. In other words, the Campollos may not simply reallege a general claim for "predatory lending."

J.    <u>Count XI (Quiet Title).</u>

Count XI alleges that "Defendants have no legal or equitable right, claim, or interest in the Property," Compl. ¶ 105, and that the Campollos are entitled to "a declaration that the title to the Subject Property is vested in Plaintiff's [sic] alone." <u>Id.</u> ¶ 106.

The Campollos appear to be making a claim under section 669-1(a) of Hawaii Revised Statutes.  That statute provides that a quiet title "[a]ction may be brought by any person against another person who claims, or who may claim adversely to the plaintiff, an estate or interest in real property, for the purpose of determining the adverse claim."  The Campollos have not alleged sufficient facts regarding the interests of various parties to make out a cognizable claim for "quiet title."  They has merely alleged elements of section 669-1 without stating a claim.  <u>See</u> <u>Iqbal</u>, 129 S. Ct. at 1949 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient.).  Accordingly, Count XI is DISMISSED with leave to amend as to all Defendants.

K.    Count XII (Lack of Standing; Improper Fictitious Entity).

Count XII asserts a claim for "Lack of Standing; Improper Fictitious Entity" against MERS.  Compl. ¶¶ 107-14. Count XII fails to state a claim because a claim for "lack of

standing" may not be alleged against a defendant.  Rather,

standing is a requirement for a *plaintiff* in order to proceed in

a civil lawsuit.  <u>See generally</u> <u>Lujan v. Defenders of Wildlife</u>,

504 U.S. 555, 560 (1992) (explaining requirements for plaintiffs

to establish constitutional standing); <u>Lake Washington Sch. Dist.</u>

<u>No. 414 v. Office of Superintendent of Pub. Instruction</u>, 634 F.3d

1065, 1067-68 (9th Cir. 2011) (explaining that plaintiffs must

also establish statutory standing, when applicable).

 Count XII alleges generally that MERS is an artificial

entity that is "designed to circumvent certain laws and other

legal requirements dealing with mortgage loans."  Compl. ¶ 110.

Plaintiffs assert that an assignment of the note or mortgage to

MERS is illegal, <u>id.</u> ¶ 111, and that therefore "MERS has no legal

standing to foreclose."  <u>Id.</u> ¶ 114.  The Campollos appear to be

alleging that MERS may not foreclose (or has improperly

foreclosed) because it is not a holder of the note.  If this is

the purpose of Count XII, the court will allow the Campollos an

opportunity to clarify the factual allegations as to MERS.  The

Campollos may, if appropriate, attempt in an Amended Complaint to

assert alleged illegalities as to MERS's status in an independent

cause of action, but not based on "Lack of Standing; Improper

Fictitious Entity."  Accordingly, Count XII is DISMISSED with

leave to amend as to MERS.

V.        CONCLUSION.

        For the reasons stated above, the court GRANTS Bank of America and MERS's motion to dismiss as to all Counts.  The court GRANTS Countrywide's motion to dismiss as to all Counts except the rescission claim in Count IV.  With respect to all Defendants, the Campollos are granted leave to amend Counts VII, VIII, IX, X, and XI.  The Campollos may also bring a separate claim for fraud.  The Campollos are further granted leave to amend Count XII as to MERS.  Counts I, II, III, V, and VI are DISMISSED without leave to amend.  The TILA damage claim in Count IV is also dismissed without leave to amend as to all Defendants, and the TILA rescission claim in Count IV against Bank of America and MERS is dismissed without leave to amend.  Any Amended Complaint must be filed not later than 14 days after the date this order is filed.

        IT IS SO ORDERED.

        DATED: Honolulu, Hawaii, June 16, 2011.



         /s/ Susan Oki Mollway
        Susan Oki Mollway
        Chief United States District Judge

Campollo v. Bank of America; Civil No. 11-00052 SOM/BMK; ORDER GRANTING DEFENDANTS BANK OF AMERICA, N.A., AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S MOTION TO DISMISS, AND GRANTING IN PART AND DENYING IN PART DEFENDANT COUNTRYWIDE BANK, FSB'S MOTION TO DISMISS.

31